that is 24-2874. Thank you. Yes. Good morning. May it please the Court, my name is Daryl Fields and I represent appellant Shateek Bland. The plea agreement in this case contained a particularly restrictive language in which the government. Excuse me, Your Honor. At the outset, the plain error is, I'm sorry, plain error. Yes, plain error. Okay. Yeah, this is a, yes, it is plain error because there was no objection. You're quite correct, Your Honor. That's, that can be important, yeah. Yes, Your Honor. The government pledged that it would not suggest in any way that the district court consider imposing any sentence above the stipulated guideline range of 51 to 63 months imprisonment. But it then asked the district court to consider a 60-month guideline sentence to be what it called an effective sentence of only 27 months. The government claimed that the effective sentence would only be 27 months because the BOP would award 33 months of credits to Mr. Bland under, for good time credits and under two rehabilitation programs, READAPT and Time Credit. Let's assume that the government's arguments were just wrong. They just, they were wrong. They certainly were wrong, at least that's the sum of it. But let's assume they were wrong as to all of it. They didn't ask for a sentence above 63 months. They said 60 months. So yes. And that's within the stipulated range, right? 60 months is within the stipulated range. Anything below 63 months, between 51 and 63. But the government, it's promised, that it promised in a plea agreement that it would not suggest in any way that the district court go above 63 months. And it did so because it is undermining, it's being lived. So it's trying to stay over that in order to get closer to the 63 months? What it's saying is that even a near top of the guideline range sentence of 60 months is an effective sentence of less than one half of that. Well, so what I, I think the argument has a lot of appeal. I mean it did come in after James. But the big difference between the sentencing and James is that the district court suggested an interest in what the ultimate number would look like. And that matters, I think, for your plain error review in that we have to show prejudice. So where is the best part of the record that you think shows that had they not said that, he would have had a lower amount? Yes, Your Honor. The error here, even if James had come out in the government's favor, this would still be a breach. Because the guilty plea, the plea agreement, the government pledged that they wouldn't argue for, that we need to suggest a sentence above the range, that they wouldn't even suggest that such a sentence, that a guideline sentence was insufficient. For the reasonable probability, for the prejudice prong, what we would show is that Judge Kraplan, he didn't explicitly mention the government's argument or, or He just didn't. Well, he used the word explicitly, but you could take the word explicitly out. He didn't mention it. He didn't. He didn't. He didn't mention their effective sentence argument. But Judge Kraplan did say that he was giving Mr. Bland a break. He was giving him a break because he had spent time in MDC. He spent 12 months in MDC. So the judge goes out of his way to say he's giving Mr. Bland a break, but he only goes down three months. Was that supposed to assume that he would have gone higher had it not been for credits? No. It gives some indication. Because the Court says, this is what the Court ultimately says to Mr. Bland on page 166 of the appendix. He says, I give you a break for that. And by that, he's talking about the time you spent in the MDC and the conditions under which you spent it. So Judge Kraplan says, I give you a break for that. Obviously, I don't expect you think you get a break, but that's a fact. The Court was making an allowance for his time in the MDC, which was 12 months. The Court explicitly said that, but it only comes down three months, which gives the indication. But the Court was not bound by the – you say come down. That makes it sound like the Court was somehow bound by the party's agreement as to the sentencing guidelines. So the plea agreement explicitly – now I'm using the word explicitly – says that the Court is not bound by the agreement. So maybe – I mean, there's a lot of maybes here. Maybe Judge Kraplan says, gee, given the history here, given the defendants, you know, the seriousness of the offense, I don't – whatever. All the things that a judge considers. You know, I might have given him 80 months or 84. But you know what? I'm going to give you a break. I'm going to give you 60. Now, the record doesn't reflect that one way or the other, but you can't really say that the judge, quote, went down three months because the judge isn't bound by it. There's no starting point. The judge is not bound by 63 months. The judge isn't bound. The judge could have given less or could have given more, right? You're correct, Your Honor. He's not bound by the plea agreement or by the stipulated guideline range. The Court did find that that was the applicable guideline range. And accordingly, when the government argues that that range is really less than half of what the Court believes it is, at that point, the Court – the government has interjected. The government introduced this notion that the Court didn't ask about. It wasn't responsive to anything the defense said. And it's this notion that you've got to look at a guideline sentence. It's less than half of what it says because it says the BOP will give him 12 months off a review. So I don't think what we're arguing is whether – or what I don't think – I don't think what's at issue is whether or not there is a plausibility that your concern occurred. What we're trying to find out is whether or not we need to vacate and send back because there was a breach. And you said that it was on plain error review. That is correct, Your Honor. So how is it – well, first, if you can explain doctrinally how it is that we are examining on plain error review a contract. Well, this Court does examine plea agreements that are broken under plain error review. First, the error's got to be clear and obvious. This error is clear and obvious. The government – and the plea agreement, it also provides that the parties are supposed to make an express request for a sentence within the range. The government was supposed to make an express request for a sentence no higher than 63 months. So that when it comes in and it tells – so it's clear that their parties are contemplating a sentence within the range. And what the defense is – the defendant is bargaining for is that the government will advocate for that range, will advocate for it and use its prestige to try to convince the judge to give a sentence within that range. But the government undermines that range. The government says – But the court does give them a sentence within the range. The court does. So the error is not anything Judge Kaplan did. That's only – I bring that up just to point out that – I point that out on the third part of plain error, that we have to show reasonable probability that the result would have been different. Okay. So do you want to move on to your second argument? This is the entire argument, is the breach. The government breached its plea agreement by denigrating the – a guideline sentence by telling the court and presenting it as a virtual certainty that Mr. Bland will get 12 months off of rehab and will get 12 months off for the time – for the time credits under the First Step Act. And neither of those were true, factually. He isn't going to get that credit for either of those programs. What about – do you – did you want to make any comments on the reference to his size? Yeah, the reference to his size is also plain error, Your Honor. It – but that's relevant to the fourth prong of plain error, that it shows the government here did not live up to the meticulous standards of plea bargaining in the fourth prong. And it also didn't do so by going back on his pledge that it would not suggest in any way a sentence above the sentencing guidelines. But where's the prejudice for that on that argument? You're dealing with, obviously, a very experienced district judge. That's right. The district judge was somehow persuaded by that. If, in fact, that was an improper argument, I'm not even sure it was. But the argument that he's a big guy, whatever, what's in the record that shows that Judge Kaplan said, you know, that's a good point, Mr. Prosecutor. I'm going to give him 60 months. No. I'm sorry. You're correct. There is nothing in the record. We're not – we're not using that for the third prong, prejudice, because there is no prejudice on the record from that because, no, Judge Kaplan, he didn't say anything about that. It's hard to believe he would even, you know, consider that. It just goes to the fourth prong, the unfairness and the casting a bad light on judicial proceedings. But the breach itself, the breach itself in them arguing that Mr. Bland had a substantial probability of getting six – 24 months off of his sentence by the BOP, which was legally impermissible argument. It's not because, as James points out, it's not relevant to any 3563A factor. It doesn't even meet 18 U.S.C. 3661 because the information isn't relevant to his character or his conduct or his background. This is speculation about something the BOP could do. But factually, in this case, it won't do. And the government didn't even look into this carefully. They just made this assertion that this is a substantial probability when, in fact, he isn't eligible. He isn't eligible for REDAP, which they now admit was only a footnote. And he wouldn't get the earned time credits under the First Step Act. And it's all because it's a 922G conviction that he's imprisoned on. And the BOP law has, for a long time, for all purposes, classified that offense as a crime of violence. For all purposes, it says in its policy statement. Okay. I think we'll hear from you on rebuttal. Thank you, Your Honor. Good morning. May it please the Court. My name is Thomas John Wright, and I represent the government on this appeal before the Court. And you were the one below. Is that right? As in the district court below, Your Honor. Okay. Your Honors, the government did not. I just want to be with the district court judge. I hate to refer to him as a court of law. So continue. Certainly, Your Honor. I don't mean that, but go ahead. Your Honors, the government did not breach its plea agreement with a defendant by arguing repeatedly and consistently in its written and its oral submissions for a sentence of 60 months, which Judge Kaplan imposed in this case. Mr. Wright, can I ask one thing? No, please. You mentioned your written submission. Did a supervisor review that before you submitted it? Yes, Your Honor. Did you miss the message that you're not entitled to RDAP credit if it's a gun charge? Has the whole U.S. Attorney's Office missed that message, which has been out there for decades, by the way? Your Honor, it was an error, one that we acknowledge. Let me ask you about the good time. The key word there is good time, right? In other words, you have to be good while you're in prison. You might not be, in which case you wouldn't get it. So it's a maybe. And then the First Step Act earned credit. Earned is a key word there. You have to earn it. If you don't earn it, you don't get it. Mr. Wright, you know, I am a district judge. It's true. And I just checked. I've imposed about 750 sentences since I've been on the bench. Roughly. Maybe it's 740. But I have never, not once, heard a prosecutor invoke any of these things as a reason for why a particular sentence ought to be imposed. Not once. It's the first time I've ever seen it, ever. Before that, I was a defense lawyer. Before that, I was a federal prosecutor. I never heard it then either. I'm just trying to figure out where does this come from? Your Honor, I think that it To make these arguments about things which are, by definition, speculative, but to say that they're not, but they are, that they're not. I mean, the truth of one of them is not, doesn't apply to all. I'm just taken aback by this. It doesn't necessarily mean that there should be a resentencing here. But I'm honestly, I was really surprised by the argument. I'm glad you're here defending it in court. Certainly, Your Honor. And we're obviously very happy to do so. Your Honor, I think that the root of the argument goes to the 3553A sentencing factors, and particularly 3553A2C. Wait a minute. You're not saying you just messed up? You're actually going to defend that position? Your Honor, in terms of the argument Let me ask the question another way. Are you intending to make this argument again? With respect to RDAP, certainly not, Your Honor, in light of both the decision in James, but also as it applied in this case. It was an error. 18 U.S.C. section 922G1. We acknowledge, as we did in footnote 4 on page 19 of our brief, that was an error. It was an error that was corrected before the court. Judge Kaplan had a substantial back and forth with counsel concerning that issue. So it's fortunately not an error that we made below that impacted the sentence that was imposed. We obviously regret the error. It's an error that we made. With respect to arguments, though, Your Honor, about what an effective sentence or a served sentence will be, as we cited in our brief, I believe, on page How about whatever argument you're about to make, think about the lessons and the guidance that we gave under James. How does whatever you're about to say square with what this circuit said about James? Absolutely, Your Honor. Not just this circuit, but this panel. James, with respect to First Step Act earned credits, the government understands held very clearly that it is error to consider the potential for earned time credits as a standalone reason apart from the factors included in 18 U.S.C. section 3553A to lengthen a sentence. And I think that what was very clear in James, a trial case out of the Eastern District of New York, in which the judge there specifically stated that it would have been a sentence of 10 years that she would have imposed, but for the specific question of how those earned time credits would have impacted the sentence. And as a result of that, imposed a sentence of 12 years. Okay, I'm sorry. I've read James a lot. What I want to know is what are the lessons that the U.S. Attorney's Office is deriving from that in terms of how you argue in sentencing? I think that it's clear that from James, Your Honor, it's important to make any argument that bears on the effective or served sentence of a defendant within the framework of the 3553A factors. Whereas we cite in our brief on page 19, it's obviously the case that to consider the issue of protection of the public and incapacitation that a judge has to and has obviously for many, many years before this court and every court in the country, consider the sentence that the defendant will serve. What James made very clear, however, and we obviously will follow it very carefully following its issuance, is that in making those types of arguments, they have to be ones that are geared to the 3553A factors instead of, as clearly occurred in James, a situation where a sentence was arrived at by the district court judge that was appropriate under the 3553A factors, in that case 10 years, and that that sentence was then, as found appropriate, then adjusted in light of those considerations. That is what James, we believe, holds, and it's one that I can assure, Your Honor, Judge Perez, we will be incredibly focused upon. So what about the precept that a basic premise for a criminal justice system is that the law punishes people for what they do, not who they are? Absolutely, Your Honor. And to address that point very squarely, obviously in preparation for this argument, the government very carefully reviewed its arguments made throughout this case that bore on the defendant's size and also strength and general build. Those arguments, Your Honor, began in the detention argument. In this case, they appear on A26. I'm sorry, they began in a what? In a detention argument, Your Honor, under the Bail Reform Act. When this defendant was arrested, he was detained before the presenting magistrate judge, and at that time, these same arguments were made, certainly at all times, to be clear, by me, as the representative of the government assigned to this case. It makes sense to me that there would be some crime, assault, witness intimidation, in which a person's size would be relevant. But this is a felon in possession, an intent to distribute, and using and carrying a firearm. And people are human. We are all works in progress. We all have growth we need to do. I am assuming that you agree that implicit bias and improper characteristics have no business infecting our judicial system or the way we decide things. I'm interested in knowing what you do when you are preparing, when you are representing this great nation, to make sure that you are not part of a problem. Absolutely. How you draw the line between an immutable characteristic like size is appropriate to mention and when it is not. Of course, Your Honor. And I think that the focus on the defendant's size here is one that's from the government's perspective very significantly tied to the offense conduct. How is it related to being a person with a criminal conviction and having a gun? How is the size related to that at all? Your Honor, as we argued at every stage of this proceeding, his detention, at sentencing, and reminded the court of in our brief on appeal here, the defendant in this case- So you're doubling down. There's not any doubt in your mind that perhaps you were getting a bit closer to the line than what would make somebody comfortable. Respectfully, no, Your Honor. It's a case in which the defendant, as we've made very clear- Tell me how marijuana with intent to distribute has anything to do with a person's size. Certainly, Your Honor. The defendant's offense conduct involved, as we described very clearly, his occupation for an extended period of time of a bodega. But you didn't charge him with trespassing or blocking a doorway. Well, Your Honor, his offense conduct is his possession with intent to distribute as an armed felon of marijuana in that bodega. And when it goes to the 3553A factors, Your Honor, obviously here concerning a sentencing issue, the 3553A factors ask us to consider the offense conduct- How do we draw the line between- Then maybe you'll help me with this. What is the thing that we need to put on a piece of paper that says impermissible use of a person's immutable characteristics and what you did was okay? What is the legal doctrine that you would have us write, the rule that you are asking us to make law in this circuit? Certainly, Your Honor. I think that an offense that involves the physical distribution of drugs while in possession of a firearm in an enclosed space by a defendant who had recently been involved in an act of violence in which he attacked a much smaller person, obviously these are factual issues, but I think that- These are factual. Those aren't elements of any crime. Well, Your Honor, they aren't elements of a crime, but at sentencing under 18 U.S.C. section 3553A, we're obviously taking in far greater cognizance of issues than the elements of 18 U.S.C. 922G1, the offense of conviction. How do we know when a prosecutor has crossed the line? Your Honor, with respect to arguing the size of an armed drug trafficker accused of the crimes and the conduct that the defendant is, I don't know that there is anything other than fact-based lines that one could consider. Size is, of course, not an issue that adopts different scrutiny than any other issue that might come before a court with respect to the factual arguments of a prosecutor. And I would add, Your Honor, that in this case, the arguments that occurred at sentencing were ones that were in no way objected to. They were arguments that were not objected to at any point. That's a different issue, right? Because you represent the government, you represent taxpayers, you are a public servant like we are. You're supposed to be doing your best and bringing your best every single time. Whether or not there's enough to send something back is a different story. Your Honor, the emphasis there I would make is that it is incumbent upon the government, both when we are making arguments as well as when we are refraining from arguments, to be certain that we allow no immutable characteristic to impact our advocacy, to be certain we argued in this case, Your Honor, with respect to an appropriate sentence based on the defense offense conduct and his ability to intimidate and intimidate those he interacted with because it was an important argument to bring to bear before the court. And if we had not made it, we would have been remiss for failing to do so. May I make an observation after what's getting to be a lot of years? I admire the Southern District's apparent practice, because they do it all the time, when one of the assistants makes a mistake and admits it, that assistant comes here to argue before us. And I nod my head in that direction.  Thank you, Your Honor. Yes, Your Honor. On the readout issue of sentencing, defense counsel tried to correct the issue, but couldn't, because the government wouldn't concede. In fact, the government doubled down on its argument that Mr. Belang won't serve his sentence    anywhere near as long as anything the court imposes on him. But you didn't make this argument in the district court. Yes. I'm sorry, Your Honor. Did you make this argument in the district court? Yes. Yes, we pointed that out to the court. But after counsel spoke, the government challenged what she said, didn't concede, challenged it, and the district court didn't make any rulings. And this court does presume that a court considers all the parties' arguments, and so we assume they considered the government's arguments about the BLP award credits and also counsel's argument, but the court didn't rule. And the government challenged, the government doubled down and said, on page 159, 160 of the appendix, you'll see, it says that it's, the prosecutor says he's the one that's telling the truth about the sentence that Belang received, and that, quote, Whatever Your Honor imposes today will not be anything close to what this defendant serves. It goes on on 162 to say, it is a statement of fact the defendant is going to serve far less than whatever you give. And when it comes to whether or not this is permissible, this is not permissible. It is never permissible to lengthen a defendant's sentence based on the prospect that the BLP may offer some reduction later for good conduct or for his participation in programs. James didn't reverse any cases of this court, and James makes clear that this is not a permissible argument, that it is not part of a 3553A factor. The government says it is a 3553A factor. That's what they're saying here in court. James says it's not. They say it's about protecting the public from further crimes. It's too uncertain about whether or not a defendant will get any of these BLP credits for any court to lengthen a sentence based on that. And it's a direct contravention of congressional policy. Congress created the REDAP program. Congress, in 2018, the first step back, created the year-on-time credits problem, but it authorized it. And the Attorney General provided the specifications. But in the year-on-time credit program, they want to give defendants incentives to participate in these recidivist reduction programs. But Mr. Bland is a 922G conviction, and he is not he is likely not going to be eligible because of the way the BLP classifies this. And defendants' lives had nothing to do with this office of government. There's no allegation that Mr. Bland was occupying. There's no evidence that Mr. Bland was occupying this bodega. No one called 911. He was a person who lived in the neighborhood. He could have just been friendly with the bodega owner. The bodega owner made no complaint. And when the prosecutor says that he attacked somebody, Mr. Bland was a victim of a shooting. The video doesn't show him attacking anybody. It just shows a smaller man who was on supervisory leave for a federal crime and was prosecuted by the Southern District, shot him. Not in self-defense. There's no self-defense claim here. The U.S. Attorney's Office of the Southern District prosecuted the person who shot Mr. Bland because he was a felon in possession, and he violated supervised release by possessing a gun. So this is all unsubstantiated in the record. Thank you, Your Honor.